ERON C. VAN KIRK, as Sheriff, etc., Respondent, v. CHARLES B. SEDGWICK et al., Appellants.

The attorney who has issued an execution is only liable to the sheriff for his fees thereon when the judgment has been satisfied and discharged by the judgment creditor, or the attorney has countermanded the execution.

An attorney is not bound, even at the solicitation of the sheriff, to repeat the directions to enforce an execution already issued, nor does he, by refusing or neglecting so to do, create a cause of action against himself.

After plaintiff as sheriff had made a levy under an execution issued to him by defendants as attorneys for the judgment creditors, said creditors, upon receipt of the indorsed notes of the judgment debtors, assigned the judgment, by instrument absolute upon its face, to one C. The assignment was in fact made to C. in trust to secure the indorsers, C. executing to the judgment debtor an agreement that if the notes should be paid at maturity or the indorsers saved harmless, he would assign or discharge the judgment as the judgment debtor should direct. The notes were not paid at maturity and the indorsers thereon were properly charged. Plaintiff called upon defendants for instructions; they replied that they had no instructions to give, that the judgment had not been paid or satisfied, but assigned to parties who were to pay plaintiff's fees, and plaintiff was referred to the attorneys of the assignee. In an action to recover sheriff's fees, held that defendants were not liable; that neither they nor the judgment creditors in any manner interfered with the collection of the execution, or withdrew any power with which, by the terms of the writ, they had invested plaintiff.

Plaintiff was allowed to testify, under objection and exception, that one of the execution creditors said to him, "we have got our pay and you ought to get yours." Held, that the evidence was improperly received, but that it was of no moment.

Van Kirk v. Sedgwick (23 Hun, 37), reversed.

(Argued December 6, 1881; decided December 15, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, in favor of plaintiff, entered upon an order made November 16, 1880, which denied a motion for a new trial and directed judgment and verdict. (Reported below, 23 Hun, 37.)

This action was brought by plaintiff, as sheriff of Tompkins county, against defendant, to recover sheriff's fees and poundage on an execution issued by defendants, as attorney for the plaintiffs, upon a judgment obtained by them in favor of Warren Halsey and others, against the Pennsylvania and Sodus Bay Railroad Company.

The material facts are stated in the opinion.

*George N. Kennedy* for appellants.    An attorney cannot be made liable for the fees of the sheriff upon an execution unless the judgment be paid or satisfied or the sheriff is prevented from collecting the same by the attorney or by the judgment creditor while he remains the owner of the judgment. (*Pixley* v. *Butts*, 2 Cow. 421 ; *Boswell* v. *Dingley*, 4 Mass. 413 ; *Parsons* v. *Bowdoin*, 17 Wend. 14 ; *Campbell* v. *Dorsey*, 7 Weekly Dig. 100 ; *Adams* v. *Hopkins*, 5 Johns. 252 ; *Bolton* v. *Lawrence*, 9 Wend. 435 ; *Jackson* v. *Anderson*, 4 id. 474–7.) The plaintiff, not having been prevented from selling the property by any act or interference of the defendants, cannot charge them with the consequences of his own neglect. (*Ray* v. *Birdseye*, 5 Den. 619 ; *Tomlinson* v. *Rowe*, Hill & Denio's Supp. 410 ; *Ansonia B. & C. Co.* v. *Babbitt*, 74 N. Y. 403.) Plaintiff, having elected to rely upon the alleged instructions and statements of the original judgment creditor in opposition to those of the attorney, after he had been informed by the latter that the judgment creditor had assigned the judgment, and his interest therein had, in fact, ceased, is bound by such election, and to recover his poundage must resort to the judgment creditor. (*Ousterhout* v. *Day*, 9 Johns. 113.)

*Merritt King* for respondent.    Where an execution is levied upon property sufficient to satisfy it, and a sale is prevented by

the act of the party in whose favor the same is issued, the attorney issuing the writ is liable to the sheriff for his fees thereon. (*Campbell* v. *Cothran*, 56 N. Y. 279, 281; *Craft* v. *Merrill*, 14 id. 456; *Parsons* v. *Bowdoin*, 17 Wend. 13; *Adams* v. *Hopkins*, 5 Johns. 252; *Bolton* v. *Lawrence*, 9 Wend. 435; *Ousterhout* v. *Day*, 9 Johns. 114; *Hildreth* v. *Ellis*, 1 Cai. 192; *Jackson* v. *Anderson*, 4 Wend. 474; *Benedict* v. *Wright*, 9 N. Y. Weekly Dig. 108.) The only remedy that the plaintiff had was to sue either the defendants or their clients. He had no right to sell the property levied upon to collect his fees. (*Craft* v. *Merrill*, 14 N. Y. 456; *Jackson* v. *Anderson*, 4 Wend. 474; *Bolton* v. *Lawrence*, 9 id. 435.)

DANFORTH, J. An attorney is not liable to the sheriff for fees on execution, unless by his act, or that of his client, the sheriff is prevented from enforcing it. (*Campbell* v. *Cothran*, 56 N. Y. 279.) The plaintiff, conceding this to be the rule, brings his case within it by declaring that " after levying on sufficient property to satisfy the execution and his fees, the execution creditors and these defendants, made a settlement with the execution debtor, by which the creditors received payment and satisfaction of the amount due on the execution, and they and these defendants directed the plaintiffs to proceed no further with the levy he had made, or the collection of the execution." He might stand on either of these facts. The General Term was not satisfied that the first was proven, but put their judgment upon the second, holding that after levy and advertisement, and before the day of sale, the plaintiff was informed, by letter from the creditors, that the judgment had been paid and satisfied in full, and at the same time directed to proceed " no further in the sale as advertised." (23 Hun, 37.) It now appears, however, by the record, that the evidence on which alone the decision was placed, although at first received, was at a later stage of the trial stricken out. The attention of the learned court could not have been directed to that circumstance, but the defendants are thus relieved from the burden which such adverse conclusion would otherwise justly put upon them. It

is no doubt open to the respondent to again contend, as his learned counsel does, that by evidence now in the case, both facts are established. *First,* was the judgment paid and satisfied? The transaction relied upon by the plaintiff as tending to that conclusion was in writing. We agree in the construction given to it by the General Term. (23 Hun, *supra.*) It was not a discharge or settlement of the judgment, but an assignment of it by the plaintiffs in the execution to one Albert Cook. It recites the judgment, the places where docketed, and to which executions for its enforcement issued ; among others, the county of Tompkins, the names of the assignors, and then that they, for a sufficient consideration, sell and transfer the judgment and the moneys due thereon to Cook, and covenant " that the whole amount is unpaid, and that they will not collect or receive the same or any part thereof, nor release or discharge it." It also contains a formal appointment of the assignee as the attorney of the assignors, irrevocable, with power to take all lawful means for the recovery of the moneys due thereon.

It is true that Cook gave to the *defendants* in the execution an agreement which shows that he received the assignment in trust, to secure certain indorsers, and when that was executed, to assign the judgment or discharge it as the *defendants* in the judgment direct, but nothing was done by which the levy was abandoned, or the power to sell on the execution lost. It was also admitted on the trial that the judgment was in fact assigned as security to the indorsers, and that at the end of ninety days from March 25th, the paper went to protest, and the indorsers were duly charged. It is obvious enough that nothing was further from the minds of the assignors or the assignee than satisfaction of the judgment. There is nothing to indicate such an intent, nor does the fact that payment was made to the plaintiff in the execution, by notes of the defendants therein alter the character of the transaction. The notes were accepted upon the credit of the indorsers, and were accompanied by an assignment of the judgment for their indemnity. These circumstances would, although the writing had been silent, establish that payment or satisfaction was not intended,

but the reverse, and would seem to keep the judgment out-standing and in force. (*Harbeck* v. *Vanderbilt*, 20 N. Y. 395.) *Second*, nor is there evidence to show that the sheriff was informed by the execution plaintiffs, or by these defendants that the judgment was paid. The plaintiff testified, against the objection and exception by the defendants, that after the transaction just referred to, "Halsey," one of the plaintiffs in the execution, said, "we have got our pay, and you ought to get yours." I think the exception to this evidence was well taken. It was mere hearsay, and the declarations were not available against these defendants ; but it was of no moment. The plaintiffs in the judgment were indeed paid, yet the judgment itself was, as we have seen, un-affected by that payment. (*Harbeck* v. *Vanderbilt*, *supra*.) There is no pretense that Halsey directed the withdrawal of the execution or the abandonment of the levy, or gave any instructions whatever in regard thereto. If any thing was due to the suggestion, it was some activity on the plaintiff's part in the performance of a duty upon which not only the amount, but the title to his fees depended. He was, however, unde-cided, and went to Syracuse, and sought the attorneys.

It is evident that up to that time he recognized no obstacle in the way of collecting the execution, or had before him any information which would permit him to let the sale go down. He saw Mr. Tracy, one of the defendants ; says, "I gave him what information I had from both sides," that "I understood the matter was settled up, that it was an important matter, and that I was unwilling to let the sale go down, and I should like to have some definite instructions in regard to it." Mr. Tracy said, "We have no instructions to give on that execution. * * * The judgment has been assigned to parties at Seneca Falls, who are to pay your fees ; Miller & Hawley of Seneca Falls are their attorneys." The plaintiff said, "I didn't come for the fees, but to find out something about the execution. He (Tracy) said it has been assigned to parties at Seneca Falls ; I then said you don't want this sale to take place. He said you needn't sell it on our account." In a conversation with another

of the defendants, while he still held the execution, he was again referred to Miller & Hawley, and says, "I don't know but he ordered me to go on and sell the property," and afterward, but while he still held the execution and levy upon the property, he received a letter from the defendants in answer to one written by him, in which among other things they say, "you can sell the property or not as you please, we have given you no instructions in regard to the execution, and shall give none," and repeat the information that the judgment was assigned, and refer the plaintiffs to Miller & Hawley.

On the 25th of July, in answer to the plaintiff's letter, the defendants say "the judgment has not been paid or satisfied, but assigned," and in December they repeat the information, adding, "I can only advise you in the matter. If I was in your place, I should advertise and sell the property of the defendants levied on," and afterward, in the same month, they wrote "the judgment has not been paid or satisfied. It has been assigned by the plaintiff and there is no reason why you should not proceed to the collection of the whole execution out of the property levied upon."

All this time the plaintiff held the execution and his levy, and we are quite unable to see in what manner the defendants or their clients interfered to the prejudice of the plaintiff. There was first given to the plaintiff the writ with its command to satisfy the judgment out of the property of the debtor, and the indorsement on the execution in the usual form to levy the amount of the judgment and his fees and poundage.

They at no time withdrew the execution or modified its commands. An attorney is not bound, even at the solicitation of the sheriff, to repeat, orally or by letter, directions to enforce a writ already issued, nor does he, by refusing or even neglecting to do so, create a cause of action against himself. There was then nothing in the language or conduct of either the execution creditor, or these defendants, which even excused the sheriff from obeying the command of the writ; much less is there evidence to sustain the allegation that the plaintiffs in the exe-

cution, or their attorneys, at any time directed the plaintiff not to sell the property levied upon, or that they in any manner interfered with the collection of the execution. They withdrew no power with which, by the terms of the writ, they had invested him. There was no transaction to his prejudice.

The assignment of the judgment did not abate his control of the property levied upon, nor was it made in secret. The defendants informed him of it. He was under no obligation to seek the assignees or their attorneys, but he did, and learned from them that the judgment was not extinguished, and according to the testimony, was also told by one of the indorsers and substituted attorneys, that he wanted the execution collected and the money made.

The plaintiff, indeed, does not recollect this; he does not deny it. I have not overlooked the provision in the instrument executed by the judgment debtors to Mr. Cook. It gave authority to enforce the execution, upon default made in payment of the notes given by them to the execution creditors. It was of no avail without the assent of the creditors, and with that had no other effect than to render the execution dormant as against subsequent execution creditors. It neither affected the lien secured by the execution nor the right to enforce it. Nor was the plaintiff informed to the contrary. Much less does he bring himself within the rule which prevents him from proceeding on the execution. It is stated in *Jackson* v. *Anderson* (4 Wend. 474), and only prohibits the sheriff to whom an execution is confided, from selling property for the purpose of collecting his fees "after due notice of the settlement and discharge of the judgment." The rule stands upon the doctrine that as sheriff, he has no interest in the judgment which will authorize him to interfere with or control any settlement or arrangement which the parties litigant may think proper to make. But it is only when the judgment itself is satisfied or discharged, or the attorney has countermanded the execution, that the sheriff may look to the attorney for his fees. None of these events have happened. The defendants even withstood the unnecessary but repeated solicitation of the sheriff, and re-

frained from any interference with the execution. He cannot complain of this, for he had the mandate of the writ before him. His loss, if any, comes from a voluntary omission to obey it. We think, therefore, the trial judge should have dismissed the complaint, or the General Term granted a new trial.

Without considering other exceptions in the case, for the errors above stated the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.